IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JUSTIN L. SUTTON, *as personal representative of the Estate of* HARTWELL LANIER KING, SR., *and* BETTY K. SUTTON, *Individually*, <br><br> Plaintiffs, <br><br> v. <br><br> ROCKINGHAM COUNTY, *et al.*, <br><br> Defendants. | 1:21CV95 |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiffs Justin and Becky Sutton sue Defendants pursuant to 42 U.S.C. § 1983 and N.C. Gen. Stat. § 28A-18-2 for the alleged wrongful death of Hartwell Lanier King, Sr., when paramedics failed to provide him with emergency medical transportation. (ECF No. 9.) Before the Court is Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6). (ECF No. 15.) For the reasons stated herein, Defendants' motion will be granted in part and denied in part.

**I.  BACKGROUND**

On October 3, 2020, King suffered severe respiratory distress and abnormal breathing, elevated heart rate, high grade fever, severe dehydration, and inability to consume solid foods and liquids. (ECF No. 9 ¶ 15.) King was elderly and suffered from quadriplegia which had confined him to an adjustable lift bed for seventeen years. (*Id.* ¶ 16.) His home health aide

1

summoned a Rockingham County Emergency Medical Services ("EMS") unit to King's home. (*Id.* ¶ 15.)

Three paramedics—Taylor Carter, Paul Higgins, and Chasity Wall—and Deputy Sheriff Terry Gautier (collectively, "Individual Defendants") arrived on the scene. (*Id.* ¶ 17.) King's daughter, Plaintiff Becky Sutton "pleaded" with the Individual Defendants "to take swift and responsive medical action by transporting Mr. King to the nearest emergency room facility." (*Id.*) Becky Sutton was King's attorney-in-fact under a valid power of attorney instrument on file with the Rockingham County Register of Deeds Office which authorized her to make medical decisions for her father. (*Id.* ¶¶ 17, 20–21, 27.) Individual Defendants "disregarded the effect and enforceability" of Becky Sutton's power of attorney, however, and refused to transport King to the hospital. (*Id.* ¶¶ 18–19.) Plaintiffs allege that the Individual Defendants "deemed Mr. King's transportation to the emergency room facility that day as tantamount to 'kidnapping,' and thus refused to transfer Mr. King out of fear and reprisal that such action would result in the termination of their employment with Rockingham County." (*Id.* ¶ 19.) King then "suffered through the evening . . . with rapidly declining vitals and an elevated fever." (*Id.* ¶ 22.) Becky Sutton summoned an ambulance again at approximately 10:30 a.m. the next morning after finding her father unresponsive with faint to little pulse, but the new EMS unit was unable to resuscitate him, and he was pronounced dead at the hospital one hour later. (*Id.* ¶¶ 23–25.)

Plaintiffs Becky Sutton, individually, and King's son Justin Sutton, as representative of his father's estate, filed this action on February 3, 2021. (ECF No. 1.) They filed an Amended Complaint (the "Complaint") on March 11, 2021. (ECF No. 9.) The Complaint alleges claims

2

against Rockingham County and Individual Defendants for violation of King's and Becky Sutton's civil rights under the Fourteenth Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983, and for wrongful death pursuant to N.C. Gen. Stat. § 28A-18-2. (*Id.* ¶¶ 30–46.) It additionally alleges that Rockingham County maintained liability insurance at all relevant times with Traveler's Indemnity Co. ("Traveler's"), who is also named as a Defendant. (*Id.* ¶ 9.)

## II. LEGAL STANDARDS

### A. Governmental immunity

Defendants argue some of Plaintiffs' claims are barred by governmental immunity under North Carolina law. (ECF No. 16 at 6–10.) The North Carolina Supreme Court has not resolved whether governmental immunity challenges personal or subject matter jurisdiction. *Myers v. McGrady*, 628 S.E.2d 761, 765 n.2 (N.C. 2006) (explaining that in 1982, the court "considered, but did not decide, whether sovereign immunity is a matter of a personal or subject matter jurisdiction" and since "has simply referred to the sovereign immunity bar as fatal to 'jurisdiction' without further specification"). The North Carolina Court of Appeals, however, has stated that "the general rule is that sovereign immunity presents a question of personal jurisdiction, not subject matter jurisdiction." *Green v. Kearney*, 690 S.E.2d 755, 760 (N.C. Ct. App. 2010); *see also Meherrin Indian Tribe v. Lewis*, 677 S.E.2d 203, 207 (N.C. Ct. App. 2009) ("[A]n appeal of a motion to dismiss based on sovereign immunity presents a question of personal jurisdiction rather than subject matter jurisdiction."). In this case, "[w]hether to assess the State sovereign immunity defense under Rule 12(b)(1) or 12(b)(2), however, appears to be immaterial." *See Simmons v. Corizon Health, Inc.*, 122 F. Supp.

3d 255, 268 n.5 (M.D.N.C. 2015). "[T]he distinction appears to have no impact on the method of review." *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 524 n.8 (M.D.N.C. 2008). The Court will therefore consider the defense of governmental immunity as a threshold issue under both Rules 12(b)(1)[1] and 12(b)(2).[2]

**B.     Rule 12(b)(6)**

Defendants' remaining arguments for dismissal arise under Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) is meant to "test[ ] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

---

[1] A motion made pursuant to Rule 12(b)(1) challenges a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). Generally, a motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of proving subject matter jurisdiction rests with the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

[2] A motion made pursuant to Rule 12(b)(2) challenges a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the ultimate burden of proving jurisdiction. *See Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). "[A] plaintiff makes a *prima facie* showing of personal jurisdiction by presenting facts that, if true, would support jurisdiction over the defendant." *See Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 561 (4th Cir. 2014). When considering whether the plaintiff has made a *prima facie* showing of jurisdiction, the court construes the pleadings, affidavits and other supporting documents presented to the court in the light most favorable to plaintiff by assuming credibility and drawing all inferences and resolving all factual disputes in the plaintiff's favor. *Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft KG v. Texport, Inc.*, 954 F. Supp. 2d 415, 419 (D.S.C. 2013) (citing *Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320, 2000 WL 691100, at *1 (4th Cir. May 30, 2000)); *see Universal Leather*, 773 F.3d at 558 (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). In reviewing a 12(b)(6) motion, the court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### III. DISCUSSION

Defendants argue that their motion to dismiss should be granted because: (1) Plaintiffs failed to allege a constitutional violation that resulted from a Rockingham County policy or custom; (2) Plaintiffs' § 1983 claim against Individual Defendants is barred by qualified immunity; (3) Plaintiffs' wrongful death claim against Rockingham County is barred by governmental immunity; (4) Plaintiffs' wrongful death claim against Defendant Gautier is barred by public official immunity; (5) Plaintiffs' wrongful death claim against Carter, Higgins, and Wall is for medical malpractice and should be dismissed for failure to comply with N.C. Civ. P. 9(j); (6) Plaintiffs have not stated a claim against Traveler's; and (7) punitive damages are not recoverable against Rockingham County. (ECF No. 16 at 6–27.)

#### A. SECTION 1983

The Fourteenth Amendment to the U.S. Constitution makes it unlawful for any state to "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. 42 U.S.C. § 1983 creates a private cause of action for damages against any

5

person "who, under color of state law causes the violation of another's federal rights." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege: (1) that defendant "deprived plaintiff of a right secured by the Constitution and laws of the United States," and (2) that the deprivation was performed under color of state law. *Philips*, 572 F.3d at 180.

Here, Plaintiffs claim that they suffered two distinct constitutional deprivations. First, Plaintiffs allege that Defendants "exhibited deliberate indifference" to King's medical condition. (ECF Nos. 9 ¶ 35; 18 at 15.) However, the Supreme Court has precluded suits alleging this type of government nonfeasance, holding that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). For this reason, courts across the country have uniformly rejected suits alleging a failure to provide medical services unless a state actor (1) created the danger or (2) put the plaintiff in custody.[3] Here, Plaintiffs have not alleged facts sufficient to establish either exception applies. Defendants did not create the danger to Mr. King or place him in custody. Instead, Plaintiffs

---

[3] *See, e.g.*, *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005) ("It is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need."); *Brown v. Penn. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003) ("[T]here is no federal constitutional right to rescue services, competent or otherwise."); *Salazar v. City of Chicago*, 940 F.2d 233, 237 (7th Cir. 1991) ("Government generally has no constitutional duty to provide rescue services to its citizens, and if it does provide such services, it has no constitutional duty to provide competent services to people not in its custody."); *Bradberry v. Pinellas County*, 789 F.2d 1513, 1517 (11th Cir. 1986) ("The Constitution, as opposed to local tort law, does not prohibit grossly negligent rescue attempts."); *see also Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir. 1995) ("The specific source of an affirmative duty to protect . . . is the custodial nature of a 'special relationship.'").

6

merely allege that Defendants refused to provide King with emergency medical services. Thus, Plaintiffs have failed to allege a violation of King's constitutional rights.

Second, Plaintiffs allege that Defendants obstructed Plaintiff Betty Sutton's right to contract on behalf of King as his attorney-in-fact as pursuant to N.C. Gen. Stat. § 32A-2(9). (ECF Nos. 9 ¶ 32; 18 at 11–16.) A violation of state law is not itself actionable under 42 U.S.C. § 1983. *Davis v. Scherer*, 468 U.S. 183, 193–94 (1984). While state law may create a property interest that is then protected by the Fourteenth Amendment, *id.* at 193 n.11 (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)); *see Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005), Plaintiffs do not argue here that Becky Sutton or King had a property interest to their power of attorney defined by state law. Instead, Plaintiffs argue that the Fourteenth Amendment guarantees their right to "contract for county services unimpaired by governmental action." (ECF No. 18 at 15–16.) Beyond a vague reference to a general "right and liberty to contract" protected by the Due Process Clause, (*id.* at 17 (citing *Williams v. Fears*, 179 U.S. 270, 274 (1900); *Allgeyer v. Louisiana*, 165 U.S. 578, 591 (1897))), Plaintiffs fail to cite any authority that recognizes their proffered constitutional right or defines its boundaries. Plaintiffs have not alleged that Becky Sutton or King entered into any contract for emergency medical services beyond summoning an ambulance and requesting that King be taken to the hospital, (ECF No. 9 ¶¶ 15, 17), and even if they had, the Supreme Court has made clear that § 1983 does not provide a remedy for simple breach of contract where state contract law provides a remedy, *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001); *Shawnee Sewerage & Drainage Co. v. Stearns*, 220 U.S. 462, 471 (1911). As Defendants correctly argue, construing Plaintiffs' interests in obtaining emergency medical services as constitutionally

7

Case 1:21-cv-00095-LCB-JLW   Document 20   Filed 03/30/22   Page 7 of 15

protected "rights to contract" in this context would undercut *DeShaney* and create a constitutional right where the Supreme Court has explicitly held there is none. (*See* ECF No. 19 at 6.)

Plaintiffs have failed to allege that Defendants deprived them of a constitutional right. Thus, Defendants' motion will be granted as to Plaintiffs' claims under § 1983.

### B. WRONGFUL DEATH

#### i. Plaintiffs' wrongful death claim against Rockingham County is barred by governmental immunity

"Under the doctrine of governmental immunity, a county or municipal corporation is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity." *Meinck v. City of Gastonia*, 823 S.E.2d 459, 462 (N.C. Ct. App.) (internal quotations omitted), *review denied*, 826 S.E.2d 720 (N.C. 2019). A government function is a "discretionary, political, legislative, or public" activity "performed for the public good [on] behalf of the State rather than for itself." *Wright v. Gaston Cty.*, 698 S.E.2d 83, 87 (N.C. Ct. App. 2010) (quoting *Britt v. Wilmington*, 73 S.E.2d 289, 293 (N.C. 1952)). Plaintiffs do not dispute that Defendants' police and paramedic services are government functions. *See Arrington v. Martinez*, 716 S.E.2d 410, 414 (N.C. Ct. App. 2011) ("The provision of police services is a governmental function which is protected by governmental immunity."); *see, e.g.*, *McIver v. Smith*, 518 S.E.2d 522, 526 (N.C. Ct. App. 1999) (holding that Forsyth County's "county-operated ambulance service is a governmental activity shielded from liability by governmental immunity").

A municipality may waive governmental immunity by purchasing liability insurance. N.C. Gen. Stat. § 153A-435(a); *Hart v. Brienza*, 784 S.E.2d 211, 216 (N.C. Ct. App. 2016). Such

a purchase, however, "does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy." *Hart*, 784 S.E.2d at 217 (quoting *Patrick v. Wake Cnty. Dep't of Human Servs.*, 655 S.E.2d 920, 923 (N.C. Ct. App. 2008)). "Waiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." *Guthrie v. N.C. State Ports Auth.*, 299 S.E.2d 618, 627 (N.C. 1983).

Here, Rockingham County purchased indemnity insurance from Traveler's. (ECF Nos. 9 ¶ 9; 15-1.) The insurance agreement provides:

> This insurance applies to the tort liability of any insured only to the extent that such tort liability is not subject to any defense of governmental immunity under North Carolina law. . . . Your purchase of this policy is not a waiver, under North Carolina General Statute Section 160A-485 or North Carolina General Statute Section 153A-435 or any amendments to those sections, of any governmental immunity that would be available to any insured had you not purchased this policy."

(ECF No. 15-1 at 17.)[4] Reviewing materially identical language, the North Carolina Court of Appeals acknowledged "the arguably circular nature of the logic" employed by such agreements, since a "[d]efendant retains immunity because the policy doesn't cover [its] actions and the policy doesn't cover [its] actions because [it] explicitly retains immunity." *Hart*, 784 S.E.2d at 217 (quoting *Estate of Earley v. Haywood Cnty. Dep't of Soc. Servs.,* 694 S.E.2d 405, 409–10 (N.C. Ct. App. 2010)). Nevertheless, the court consistently has held that such language is

---

[4] The insurance agreement, referenced in the Complaint and submitted and authenticated via affidavit to the Court by Defendants, is properly considered on a motion to dismiss for lack of jurisdiction. *Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320, 2000 WL 691100, at *1 (4th Cir. 2000); *Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft KG v. Texport, Inc.*, 954 F. Supp. 2d 415, 419 (D.S.C. 2013).

9

unambiguous and "clearly preserves the defense of governmental immunity." *Id.*; *see Earley*, 694 S.E.2d at 409–10; *Patrick*, 655 S.E.2d at 924.

This Court also acknowledges the circular nature of Defendants' argument and recognizes that widespread implementation of similar language could render N.C. Gen. Stat. § 153A-435(a) superfluous. However, "strictly constru[ing]" North Carolina's waiver of immunity, as it must, *Guthrie*, 299 S.E.2d at 627, leads the Court to find that Rockingham County has not waived its governmental immunity defense. This Court will not invalidate this unambiguous agreement as against North Carolina policy when neither the General Assembly nor North Carolina courts have done so.

Plaintiff's wrongful death claim against Rockingham County is barred by governmental immunity and will be dismissed.

> ii. Plaintiffs' wrongful death claim against Defendant Gautier is not barred by public official immunity

Defendants next argue that Defendant Gautier is shielded from Plaintiffs' wrongful death claims by public official immunity. (ECF No. 16 at 25–26.) Under North Carolina law, "a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Meyer v. Walls*, 489 S.E.2d 880, 888 (N.C. 1997). A public official may nevertheless be liable where his conduct was "(1) corrupt; (2) malicious; (3) outside of and beyond the scope of his duties; (4) in bad faith; or (5) willful and deliberate." *Smith v. Jackson Cty. Bd. of Educ.*, 608 S.E.2d 399, 411 (N.C. Ct. App. 2005). Willful and deliberate conduct has been found where a highway-patrol training officer knew that a cadet had suffered a severe injury but failed to provide aid within a reasonable timeframe, *Martin v. Moreau*, 770 S.E.2d 390, 2015

10

WL 661178, at *5 (N.C. Ct. App. 2015), and where a sheriff knew that a deputy had previously assaulted a minor but nevertheless assigned him to work as a school resource officer, *Smith*, 608 S.E.2d at 411.

Here, Plaintiffs allege that Gautier knew that King was suffering from severe respiratory distress and abnormal breathing but refused to transport him to the hospital. (ECF No. 9 ¶¶ 15, 19.) Like the defendant in *Martin*, he allegedly knew that inaction posed a serious risk to King's health but failed to provide timely aid. He also was allegedly presented with Becky Sutton's power of attorney but refused to acknowledge it. (*Id.* ¶ 18.) Thus, Plaintiffs have sufficiently alleged more than "mere negligence." Taking the facts alleged in the Complaint in the light most favorable to Plaintiffs, Gautier knew of a severe risk to King's health and a legal duty to acknowledge Becky Sutton's power of attorney but willfully and deliberately refused to allow King to be transported to the hospital.

Thus, Plaintiffs' wrongful death claim against Gautier is not barred by public official immunity.

### iii. Plaintiffs' wrongful death claims against Carter, Higgins, and Wall does not sound in medical malpractice

Defendants next argue that Plaintiffs' wrongful death claims against paramedics Carter, Higgins, and Wall sound in medical malpractice and, therefore, Plaintiffs were required to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. (ECF No. 16 at 23–24.) Rule 9(j) requires that "[a]ny complaint alleging medical malpractice by a health care provider pursuant to [N.C. Gen. Stat. §] 90-21.11(2)a." must allege that either a medical expert has reviewed the medical records and "is willing testify that the medical care did not comply with the standard of care," or liability can be established through res ipsa loquitur. N.C. R.

11

Civ. P. 9(j)(1)–(3). "Medical malpractice" includes any "civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2)(a). A paramedic is a health care provider. § 90-21.11(1)(e). Rule 9(j) was enacted, "in part, to protect defendants from having to defend frivolous medical malpractice actions by ensuring that . . . a competent medical professional has . . . concluded that [defendant's] conduct did not meet the applicable standard of care." *Estate of Waters v. Jarman*, 547 S.E.2d 142, 144 (N.C. Ct. App. 2001). "Failure to comply with Rule 9(j) is ground for dismissal of a state law medical malpractice claim filed in federal court." *Graves v. Andrews*, No. 1:12CV154, 2013 WL 1010473, at *8 (M.D.N.C. Mar. 14, 2013), *aff'd*, 539 F. App'x 157 (4th Cir. 2013); *see Littlepaige v. United States*, 528 Fed. App'x 289, 293 (4th Cir. 2013) ("[A] Rule 9(j) certification is a mandatory requirement for a plaintiff in a North Carolina medical malpractice action.").

North Carolina courts distinguish between claims of medical malpractice, which require compliance with Rule 9(j), and assertions of "ordinary negligence." *Littlepaige*, 528 Fed. App'x at 291, 293 (citing *Waters*, 547 S.E.2d at 145). Medical malpractice actions allege negligence relating to "medical decision[s] requiring clinical judgment and intellectual skill" and "clinical patient care." *Id.* at 293 (quoting *Sturgill v. Ashe Mem'l Hosp., Inc.*, 652 S.E.2d 302, 306 (2007), then quoting *Waters*, 547 S.E.2d at 145). Allegations of negligence "which arise out of policy, management, or administrative decisions," on the other hand, "sound in ordinary negligence." *Id.* (quoting *Deal v. Frye Reg'l Med. Ctr., Inc.*, 691 S.E.2d 132, 2010 WL 522727, at *2 (N.C. Ct. App. 2010)). These latter decisions include "granting or continuing

12

hospital privileges, failing to monitor or oversee performance of the physicians, credentialing, and failing to follow hospital policies." *Id.* (quoting *Waters*, 547 S.E.2d at 145), as well as maintaining a policy of discharging patients when their insurance expires, *Muse v. Charter Hosp. of Winston-Salem, Inc.*, 452 S.E.2d 589, 594 (N.C. Ct. App.), *affirmed*, 464 S.E.2d 44 (N.C. 1995).

Here, Plaintiffs do not allege medical malpractice. Taking all alleged facts in the light most favorable to Plaintiffs, Defendants' refusal to transport King to the hospital was not a medical decision based on the severity of his condition, but rather a legal decision based on their fear that transporting King would constitute "kidnapping" and would cause them to lose their employment. (ECF No. 9 ¶ 19.) Moreover, Plaintiffs allege Defendants refused to recognize Becky Sutton's power of attorney—another administrative decision that required no medical expertise. These decisions are akin to the hospital's administrative policy in *Muse* of discharging patients based on the expiration of their insurance rather than their medical needs. *Muse*, 452 S.E.2d at 593. In both cases, the allegations that health care providers refused medical treatment based on an administrative, not medical, decision.

Defendants cite *Smith v. City of Greensboro*, No. 1:19CV386, 2020 WL 1452114 (M.D.N.C. Mar. 25, 2020), *reconsideration denied*, No. 1:19CV386, 2021 WL 5771544 (M.D.N.C. Dec. 6, 2021), but *Smith* is inapposite. There, plaintiffs conceded that their wrongful death suit against paramedics who negligently failed to treat or resuscitate an arrestee who was "unconscious, unresponsive, and not breathing" sounded in medical malpractice. *Id.* at *17. Here, Plaintiffs specifically allege that Defendants' decision not to treat King was based on legal and administrative considerations, not medical ones.

13

Thus, Plaintiffs were not required to comply with Rule 9(j), and Defendants are not entitled to dismissal on this ground.

### C. TRAVELER'S

Defendants next argue that Traveler's is not a proper party to this suit. (ECF No. 16 at 10–11.) A person may not be joined as a party defendant unless the plaintiff asserts a right to relief against it. Fed. R. Civ. P. 20(a)(2). Here, Plaintiffs do not assert any claims against Traveler's in their Complaint. Nor could they. They make no allegation of any causal connection between Traveler's and the alleged constitutional violation as necessary to state a claim under 42 U.S.C. § 1983, *see Gibson v. City of Glendale Police Dep't*, 786 F. Supp. 1452, 1455 (E.D. Wis. 1992), and Traveler's is not a proper party to Plaintiffs' state law wrongful death claim, *Taylor v. Green*, 87 S.E.2d 11, 13 (N.C. 1955) ("Ordinarily, . . . [t]here is no privity of contract between the insurer and the third person injured or damaged by the acts of the insured to enable such person to sue the insurer either directly in a separate action or jointly in the same action with the insured.").

Plaintiffs argue that they were required to name Traveler's as a defendant in order to overcome Rockingham County's governmental immunity, discussed above. (ECF No. 18 at 8–10.) The Court finds no support for this position. *See Turner v. Randolph Cty.*, 912 F. Supp. 182, 187 (M.D.N.C. 1995) ("[I]n order to state a claim relying on this waiver of immunity, a plaintiff must allege in the complaint that the governmental immunity has been waived through the purchase of insurance."); *Clark v. Burke Cty.*, 450 S.E.2d 747, 748 (N.C. Ct. App. 1994) ("[A]bsent an allegation to the effect that immunity has been waived, the complaint fails to state a cause of action."); *Cowell v. Gaston Cty.*, 660 S.E.2d 915, 920 (N.C. Ct. App. 2008)

14

(denying summary judgment where genuine issue of material fact existed concerning scope of insurance policy although insurer was not a named defendant).

Thus, Traveler's will be dismissed as a defendant in this action.

### D. PUNITIVE DAMAGES

Finally, Plaintiffs concede, and the Court finds, that they cannot recover punitive damages against Rockingham County under either § 1983 or state law. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Long v. City of Charlotte*, 293 S.E.2d 101, 113–14 (N.C. 1982). This claim will be dismissed.

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (ECF No. 15), is GRANTED in part and DENIED in part. It is GRANTED as to Plaintiffs' claims arising under 42 U.S.C. § 1983 against all Defendants, Plaintiffs' wrongful death claim against Rockingham County, Plaintiffs' claims against Traveler's, and Plaintiffs' claim for punitive damages against Rockingham County. It is DENIED as to Plaintiffs' wrongful death claims against Individual Defendants.

This, the 30th day of March 2022.

/s/ Loretta C. Biggs
United States District Judge